IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01422-PAB-SBP

DARREN MARKLEY,

    Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION, d/b/a US Bank,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint and Jury Demand [Docket No. 17], filed by defendant U.S. Bank National Association ("US Bank") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Darren Markley filed a response, Docket No. 21, and defendant filed a reply. Docket No. 22. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**

  **A. Factual Background[1]**

This case arises out of US Bank's termination of Mr. Markley in 2018. Docket No. 4 at 2, ¶ 1. The complaint alleges that Mr. Markley was a long-time employee of US Bank and served as Senior Vice President, Managing Director of Private Wealth Management for US Bank in Colorado from 2009 until March 2, 2018. *Id.* In his role as Senior Vice President, Mr. Markley oversaw the trust, investment, and advisory

---

[1] The following facts are taken from Mr. Markley's complaint, Docket No. 4, and are presumed true for the purpose of ruling on defendant's motion to dismiss.

services' business at US Bank in Colorado.  *Id.* at 4, ¶ 11.  Mr. Markley was responsible for ensuring that his employees adhered to the US Bank Code of Ethics and Business Conduct.  *Id.*, ¶ 17.  He was an outstanding performer during his tenure at US Bank and received excellent annual performance evaluations.  *Id.* at 5, ¶ 19.  Mr. Markley worked with Robert Provencher, who was the only private wealth management consultant on US Bank's wealth management team.  *Id.*, ¶ 20.

In December 2017, Mr. Markley learned that Dave Crittendon, Mr. Markley's colleague and Senior Vice President of Private Banking, and others on the private wealth management team had secured a new client.  *Id.*, ¶¶ 21–22.  The client wanted her funds to be invested immediately, but Mr. Crittendon was waiting to invest the funds until January 2018, when a new compensation plan took effect, so that a commission could be paid to one of Mr. Crittendon's private bankers.  *Id.* at 5–6, ¶¶ 21–27.  This practice is referred to as "sandbagging" and is a violation of US Bank's Code of Ethics and Business Conduct.  *Id.* at 5, ¶ 25.  Mr. Markley also believed that this was a violation of the Certified Financial Analysts Code of Ethics and Standards of Professional Conduct.  *Id.* at 6, ¶¶ 29–31.  Mr. Markley investigated the legal and ethical issues regarding the suspected sandbagging and spoke with the wealth management team members who were involved.  *Id.* at 7, ¶ 36.  Mr. Markley decided that the funds should be invested immediately.  *Id.*, ¶ 37.  In December 2017, Mr. Markley informed his supervisor about the issues regarding the client's uninvested funds and recommend that "they further investigate and take action with the [wealth management] team members who were involved."  *Id.*, ¶ 38.

Mr. Markley's instructions that the new client's funds were to be immediately invested resulted in Mr. Crittendon and other members of the wealth management team having ill feelings towards Mr. Markley. *Id.*, ¶ 39. These employees, including Mr. Crittendon, initiated a "bogus complaint of sales misconduct" against Mr. Markley and Mr. Provencher in late 2017 and early 2018. *Id.*, ¶ 42.

After Mr. Crittendon made his complaint, Mr. Markley was asked to provide information regarding 2017 sales involving Mr. Provencher. *Id.*, ¶ 43. Mr. Crittendon reviewed Mr. Markley's responses and disputed Mr. Provencher's involvement in five sales. *Id.* at 8, ¶ 45. The discrepancies between Mr. Markley's responses and the responses provided by Mr. Crittendon were referred to US Bank's internal fraud and sales misconduct team. *Id.*, ¶ 46.

On February 26, 2018, a member of the fraud and sales misconduct team interviewed Mr. Markley. *Id.*, ¶ 48. He accused Mr. Markley of approving improper sales, which Mr. Markley denied. *Id.*, ¶¶ 48–52. At the conclusion of the meeting, US Bank placed Mr. Markley on paid leave. *Id.* at 9, ¶ 53. During the investigation into Mr. Markley's alleged misconduct, the investigator failed to interview Mr. Markley's direct supervisor, failed to review sales records and emails, and failed to adequately review the Private Wealth Compensation Plan, which authorized Mr. Markley's actions regarding Mr. Provencher. *Id.*, ¶¶ 56–57. The investigator produced a report that contained numerous inconsistencies and lies. *Id.*, ¶ 55.

Mr. Markley told US Bank that the investigation into his alleged misconduct was retaliation by Mr. Crittendon. *Id.*, ¶ 54. US Bank's Sales Misconduct Procedure Guide provides: "[a]ll allegations of sales misconduct or retaliation on the basis of reporting

3

sales misconduct will be thoroughly investigated in accordance with established procedures, irrespective of how received by the Bank, or whether they are deemed 'formal' or 'informal.'"  *Id.*, ¶ 60.  US Bank did not authorize an investigation into Mr. Markley's claims of retaliation.  *Id.*, ¶ 62.  Mr. Markley also contacted the human resources department to report his concerns that he was being retaliated against in violation of US Bank's policies.  *Id.* at 10, ¶ 64.  While representatives from human resources provided Mr. Markley with a one-hour opportunity to explain the situation, US Bank conducted no further investigation into Mr. Markley's report of retaliation.  *Id.*, ¶¶ 65–69.  US Bank terminated Mr. Markley on March 2, 2018.  *Id.*, ¶ 70.

Mr. Markley brings a claim for wrongful discharge in violation of public policy under Colorado law.  *Id.* at 10–11, ¶¶ 71–75.  Mr. Markley claims that US Bank terminated him in retaliation for his whistleblowing on the sandbagging practices of Mr. Crittendon and others, which implicates public policy through the fiduciary duties US Bank owes its clients.  *Id.*

### B.  Procedural Background

Generally, a court should not consider evidence beyond the pleadings when ruling on a Rule 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and if the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  "A district court, however, may take judicial notice of its own files and records, as well as facts which are a matter of public record."  *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (citation and quotation omitted).  A court has "broad discretion in determining whether or not to accept materials beyond the pleadings."  *Lowe v. Town of Fairland*,

4

143 F.3d 1378, 1381 (10th Cir. 1998). "It, thus, is unremarkable that courts frequently take judicial notice of prior judicial acts found in records and files when evaluating the merits of a purported claim-preclusion defense." *Johnson*, 950 F.3d at 705.

In *Markley v. U.S. Bank National Association*, No. 19-cv-01130-RM-NYW, 2021 WL 2184850 (D. Colo. May 28, 2021), a case filed four years before Mr. Markley filed this case, Mr. Markley brought two claims against US Bank based on his termination: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), and (2) a state wrongful discharge claim.[2]  *Id.* at *1–*5.  In a summary judgment order dated May 28, 2021, Judge Raymond Moore's findings of fact paint a different picture than Mr. Markley's complaint.  Judge Moore determined that Mr. Markley failed to meet his burden on the ADEA claim under the *McDonnell Douglas* test because Mr. Markley failed to cite evidence sufficient to show that the reason US Bank gave for his termination – i.e., the sales misconduct – was a pretext for age discrimination.  *Id.* at *2–*5.  Judge Moore dismissed Mr. Markley's age discrimination claim.  *Id.* at *5.  The court based jurisdiction over the matter on the grounds asserted by Mr. Markley, namely, federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Mr. Markley's wrongful discharge claim.  *Id.*  Mr. Markley did not assert that the court had diversity jurisdiction.  Having dismissed Mr. Markley's federal age discrimination claim, the court declined to exercise supplemental jurisdiction over Mr. Markley's state law claim and therefore dismissed it without prejudice.  *Id.*; *see also Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, the federal

---

[2] The Court takes notice of the filings in this case.

5

court should decline the exercise of jurisdiction by dismissing the case without prejudice." (quotation omitted)); *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (2010), abrogated on other grounds by *Torres v. Madrid*, 592 U.S. 306 (2021) ("we decline to exercise jurisdiction over Mr. Brooks's remaining state law claim, and, instead, reverse the district court's grant of summary judgment on that claim and remand with instructions to dismiss it without prejudice").  Mr. Markley appealed.  *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1090 (10th Cir. 2023).  On February 8, 2023, the Tenth Circuit affirmed Judge Moore's summary judgment order, finding that, "[i]n the complete absence of other evidence of impermissible bias, imperfections in an investigation supporting an adverse employment action are insufficient to establish pretext and Mr. Markley has also generally failed to produce evidence demonstrating [the] investigation suffered from significant deficiencies." *Id*.

Given the dismissal of his state wrongful discharge claim without prejudice, on May 4, 2023, Mr. Markley filed a new case in state district court.  Docket No. 4 at 1, 10–11, ¶¶ 71–75.  On June 5, 2023, US Bank removed the case to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332.  Docket No. 1 at 2, ¶ 9.

In its motion to dismiss, US Bank alleges that Mr. Markley's wrongful discharge claim should be dismissed because the court in Mr. Markley's earlier matter had diversity jurisdiction and because of the doctrines of claim splitting, claim preclusion, law of the case, and issue preclusion.  Docket No. 17 at 8–9.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671

6

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

7

## III.  ANALYSIS

US Bank makes five arguments for the dismissal of Mr. Markley's wrongful discharge claim.  First, US Bank argues that, despite Judge Moore having declined to exercise supplemental jurisdiction and dismissing Mr. Markley's wrongful discharge claim without prejudice, the court had no discretion to decline jurisdiction because, in fact, it had diversity jurisdiction over the case and therefore its dismissal was with prejudice.  Docket No. 17 at 9–10.  Second, US Bank asserts that the doctrine against claim splitting requires the Court to dismiss Mr. Markley's claim because his wrongful discharge claim is split from his previously adjudicated age discrimination claim.  *Id.* at 10–11.  Third, US Bank contends that the doctrine of claim preclusion prohibits Mr. Markley from bringing his wrongful discharge claim because the wrongful discharge claim and the age discrimination claim were part of the same underlying transaction or occurrence.  *Id.* at 13–14.  Fourth, US Bank claims that the law of the case, which includes both the present case and Mr. Markley's prior case, forecloses Mr. Markley from relitigating issues determinative of his wrongful discharge claim.  *Id.* at 14–15.  Fifth, US Bank argues that the doctrine of issue preclusion prohibits Mr. Markley from relitigating whether US Bank's decision to fire Mr. Markley for sales misconduct was pretextual, which, it argues, is necessary for Mr. Markley to prevail on his wrongful discharge claim.  *Id.* at 13–14.

US Bank argues that Judge Moore's order operated as a dismissal of Mr. Markley's wrongful discharge claim with prejudice, and therefore, Mr. Markley cannot relitigate his claim.  *Id.* at 9.  US Bank insists that, "[w]hile the Court unequivocally granted U.S. Bank's Motion for Summary Judgment, which asked the Court to dismiss Markley's claims in their entirety 'with prejudice,' the Summary Judgment Order purports

8

to decline to exercise supplemental jurisdiction over Markley's wrongful discharge claim and to dismiss it without prejudice." *Id.* (citation omitted). However, according to US Bank, Mr. Markley's "wrongful discharge claim remained properly before the Court based on diversity jurisdiction and as a result, the [c]ourt lacked authority to decline to rule on the claim as a matter of law." *Id.*; *see also 1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party, and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction at any stage in the litigation." (citation and quotation omitted)); *Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783, 788 n.9 (5th Cir. 1993) ("Williams also apparently argues that once she abandoned any claims that might involve a federal question, the district court should have remanded because only state claims remained. Because the parties were of diverse citizenship, the district court's substantive subject matter jurisdiction still existed, so the refusal to remand was not error.")*; Brockman v. Merabank*, 40 F.3d 1013, 1017 (9th Cir. 1994) ("The Supreme Court concluded that when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court. The Court in *Carnegie–Mellon* made clear that its holding would not be applicable to a case where, for example, the district court had diversity jurisdiction, because the exercise of diversity jurisdiction is not discretionary.") (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 356 (1988) (quotations omitted)). Mr. Markley responds that Judge Moore's order means what it says – that Mr. Markley's wrongful discharge claim was dismissed without prejudice. Docket No. 21

9

at 8. Furthermore, Mr. Markley argues that, by failing to appeal Judge Moore's dismissal without prejudice, US Bank has waived the argument. *Id.* at 9. US Bank replies that arguments that a court lacks subject matter jurisdiction cannot be waived. Docket No. 22 at 6 (citing *United States v. McGaughy,* 670 F.3d 1149, 1155 (10th Cir. 2012) ("Subject matter jurisdiction cannot be conferred or waived by consent, estoppel, or failure to challenge jurisdiction early in the proceedings.")).

On the issue of subject matter jurisdiction, US Bank makes the counterintuitive argument that Judge Moore's dismissal of Mr. Markley's state law claim without prejudice was really a dismissal with prejudice. Docket No. 17 at 8–10. US Bank's reasoning is that, (a) even though Mr. Markley did not assert diversity jurisdiction in the complaint, but rather only federal question jurisdiction over the ADEA claim and supplemental jurisdiction over the state law claim; (b) even though Mr. Markley did not assert his citizenship or US Bank's citizenship, and (c) even though US Bank never asserted that the court had diversity jurisdiction over the state law claim,[3] the court had an independent duty to determine whether diversity jurisdiction existed. Docket No. 22 at 6 ("the Court failed to satisfy its duty to examine its jurisdiction before refusing to adjudicate Markley's wrongful discharge claim"). US Bank's theory is incorrect. A court has no duty to conduct an independent investigation into alternative bases for its subject matter jurisdiction. While it is true that, where the jurisdictional allegations of a

---

[3] US Bank admits that "Markley's citizenship was not established until he filed his Amended Disclosure Statement on July 7, 2023, representing that at the time of removal, Markley was 'a citizen of the state of Colorado,'" and that "US Bank only represented that it does business in Colorado where it also has a principal office, which also could not establish diversity", Docket No. 22 at 7 (citation and emphasis omitted), acknowledging that none of the pleadings at the time Judge Moore dismissed the state claim without prejudice indicated a basis for diversity jurisdiction.

complaint are not well pled, *see Lynn v. Brown*, 803 F. App'x 156, 159 (10th Cir. 2020) (unpublished), or where procedural developments, such as the dismissal of a diverse party, or new discovery create doubt as to whether subject matter jurisdiction exists, a court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *1mage Software*, 459 F.3d at 1048 (citation omitted). However, none of the cases cited by US Bank stands for the proposition that, if a court has a proper jurisdictional basis to proceed, it must go beyond the pleadings in order to determine whether it has alternate bases for subject matter jurisdiction. The fact that a court, under certain circumstances, could choose to do so does not mean that a court must do so. Therefore, Judge Moore acted appropriately in following *Brooks*, 614 F.3d at 1230, and dismissing Mr. Markey's wrongful discharge claim, which had the effect that Judge Moore stated, a dismissal without prejudice.

US Bank further argues that Mr. Markley has impermissibly split his claims. Docket No. 17 at 10. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Katz v. Gerardi,* 655 F.3d 1212, 1217 (10th Cir. 2011). "By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Id.* (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)). "It is well-settled that a plaintiff may not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." *Hartsel Springs Ranch*, 296 F.3d at 990. First, the Court notes that US Bank misunderstands the appropriate procedural posture of a claim splitting argument. A claim splitting

11

argument applies when a plaintiff has filed two claims in separate but related suits, neither of which has proceeded to a final adjudication.  *Id.* at 987 n.1 ("It is clear that a motion to dismiss based on improper claim-splitting need not – indeed, often cannot – wait until the first suit reaches final judgment." (citing *Calderon Rosado v. Gen. Elec. Circuit Breakers, Inc.,* 805 F.2d 1085, 1087 (1st Cir.1986) (recognizing that, if two suits based on the same claim are pending, but the defendant waits to file a motion to dismiss until "after judgment enters on one of the two," then "the motion should be denied"))).  Here, Mr. Markley did not improperly split his claims.  Rather, he filed both of his claims in a single action in federal court.  Mr. Markley's state law claim ended up in state court, not through a tactical decision by Mr. Markley, but because Judge Moore declined to exercise supplemental jurisdiction over Mr. Markley's state law claim.[4]  *Markley*, 2021 WL 2184850, at *5.  It was not improper for Mr. Markley to refile his claim in state court, and US Bank's removal of the case to federal court does not turn that action into improper claim splitting.

Next, US Bank argues that Mr. Markley's claims are barred by res judicata. Docket No. 17 at 13–14.  "The doctrine of res judicata, or claim preclusion, [ ] prevent[s] a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment. . . .  To apply claim preclusion, three elements must exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Lenox*

---

[4] As noted below, his state court claim also ended up in state court due to Mr. Markley's failure to allege diversity jurisdiction.

*MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (citations, quotations, and alterations omitted).

US Bank asserts that Mr. Markley's wrongful discharge claim should be dismissed because each of the three elements of claim preclusion are satisfied by Judge Moore's dismissal of the claim without prejudice. Docket No. 17 at 13–14. Specifically, US Bank argues that there is an identity of parties, and, because Judge Moore's prior order on Mr. Markley's wrongful discharge claim was, in fact, with prejudice, there has been a final judgment on the merits of an identical wrongful discharge claim. *Id.* The Court has already rejected US Bank's argument that Judge Moore's order dismissing Mr. Markley's wrongful discharge claim was with prejudice. As such, the Court rejects US Bank's argument that Judge Moore's dismissal of Mr. Markley's state law claim satisfies the first element of claim preclusion for the reasons US Bank provides. However, "once an argument is before [the Court], it is [the Court's] job to get the relevant case law right," and to use its "full knowledge of . . . relevant precedents." *Mary Quintana v. Justin Dodge*, 2024 WL 1048959, at *4 n.4 (10th Cir. Mar. 11, 2024) (citations and alterations omitted).

The Tenth Circuit has adopted a transactional approach to determine what constitutes a "cause of action" for claim preclusion purposes. *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1240. The transactional approach provides that a final judgment extinguishes:

> [A]ll rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit.

*Wilkes v. Wyoming Dep't of Emp. Div. of Lab. Standards*, 314 F.3d 501, 504 (10th Cir. 2002), *as amended* (Jan. 14, 2003).  The Tenth Circuit has held that "all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes."  *Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000).  In particular, the Tenth Circuit has twice concluded that an employee cannot subsequently sue an employer for wrongful discharge after having first sued for unpaid overtime under the Fair Labor Standards Act.  *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1228 (10th Cir. 1999) (citing *Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1239 (10th Cir. 1992)).  Therefore, all claims arising from Mr. Markley's March 2, 2018 termination constitute the same transaction and satisfy the third element of res judicata.  There is also no dispute regarding the identity of the parties, as Mr. Markley is again suing US Bank.  Therefore, the Court considers whether there was a final judgment on the merits.

As a general rule, dismissal without prejudice "is a dismissal that does not operate as an adjudication upon the merits and thus does not have a res judicata effect."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (citation, quotation, and alterations omitted); *see also Gold v. Loc. 7 United Food & Com. Workers Union*, 159 F.3d 1307, 1311 n.5 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld Cnty. Bd. of Comm'rs*, 365 F.3d 855, 858 (10th Cir. 2004) (finding that a court's refusal to exercise supplemental jurisdiction has no res judicata effect).

The next issue is whether there is some reason that the general rule does not apply.  The Court finds that there is.  Although, as noted earlier, a court does not have a duty to discover an alternative basis for jurisdiction, the question here is whether Mr.

Markley needed to assert diversity jurisdiction as an alternative basis for jurisdiction over his wrongful discharge claim and, if he did not do so, whether Judge Moore's dismissal without prejudice nevertheless constitutes res judicata. A similar situation occurred in *Maher v. GSI Lumonics, Inc.*, 433 F.3d 123 (1st Cir. 2005). In *Maher*, the plaintiff brought claims against his former employer under the ADEA, the Older Workers' Benefit Protection Act, 29 U.S.C. § 626(f), and under Massachusetts law. *Maher*, 433 F.3d at 125 n.1. The district court granted summary judgment in favor of the employer on the federal claims and "transferred" the related state-law claims to state court, where they were dismissed. *Id.* at 125. The plaintiff refiled his state law claims in state court. *Id.* The employer removed the case to federal court, asserting diversity jurisdiction. *Id.* The employer moved for summary judgment on res judicata grounds, which the district court granted. *Id.* at 125–26. On appeal, the First Circuit noted that in *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161 (1st Cir. 1991), the court "held that a litigant's second suit was precluded because he did not pursue all of his state-law claims by asserting diversity jurisdiction in his first suit in federal court when he could have done so." *Maher*, 433 F.3d at 126 (citing *Kale*, 924 F.2d 1165). The court explained its holding in *Kale* as follows:

> In *Kale,* the plaintiff-appellant Carl Kale filed suit against his former employers in federal court, pleading federal question jurisdiction, but not diversity jurisdiction. The district court granted summary judgment in favor of the defendant on Kale's federal claims and dismissed without prejudice the related state-law claims. Kale did not seek to amend his complaint in district court to allege diversity jurisdiction but instead filed suit in Massachusetts state court, alleging injuries stemming from the same cause of action. The defendant removed the state case to federal court based upon diversity jurisdiction and then moved for summary judgment on res judicata grounds. . . . We held that Kale's second suit was precluded because he could have pursued his state-law claims in his first suit if he had alleged diversity jurisdiction.

15

*Id.* (citations omitted).  The court concluded that "[t]he present case involves essentially the same procedural missteps made in *Kale*."  *Id.*  The court then found that, "[l]ike Kale's 'cursory reference' to diversity jurisdiction, Maher's reliance on *sua sponte* action by the district court to assert diversity jurisdiction for him is unavailing."  *Id.*  The court noted that it was "Maher's duty to assert the jurisdictional basis of his claim."  *Id.* at 127.  In analyzing elements for claim preclusion identical to those applied by the Tenth Circuit, the court further explained that the "'transfer' of his state-law claims does not, however, negate the fact that there was a summary judgment on his federal claims which provides the 'traditional basis for the operation of res judicata.'"  *Id.* (citing *AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 34 (1st Cir. 2005)).  "Moreover, because the district court 'transferred' the state-law claims only after declining to exercise supplemental jurisdiction, the district judge likely meant for the 'transfer' to operate as a dismissal.  Thus, the district court rendered a final judgment on the merits.  Accordingly, all three elements of the test are established and res judicata applies in this case."  *Id.* (footnote omitted).

      Here, it was Mr. Markley's burden to establish the jurisdictional grounds for the claims in his first suit, and, as both parties acknowledge, neither party provided sufficient evidence for the district court to determine that it had diversity jurisdiction.  *Port City Properties v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008) ("The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.");  *supra* note 3.  Mr. Markley could have pursued his state law claim in federal court by invoking diversity jurisdiction in the complaint, but failed to do so.  His invocation of diversity jurisdiction, which would have caused Judge Moore to rule on the merits of his

16

state law claim, "*could have been raised* in the prior action." *Wilkes*, 314 F.3d 503–04; *Maher*, 433 F.3d at 127. Although Judge Moore's prior order dismissed Mr. Markley's wrongful discharge claim without prejudice because Judge Moore declined to exercise supplemental jurisdiction, the dismissal of "his state-law claims does not . . . negate the fact that there was a summary judgment on his federal claims." *Maher*, 433 F.3d at 127. Judge Moore's order constituted a final judgment for purposes of res judicata because Mr. Markley could have pursued his wrongful discharge claim under diversity jurisdiction. Each of the elements of res judicata are met in this case, which forecloses Mr. Markley from reasserting his wrongful discharge claim.[5] The Court will dismiss Mr. Markley's wrongful discharge claim and declines to review the remainder of US Bank's arguments.

## IV. CONCLUSION

For the foregoing reasons, it is

---

[5] It is unclear whether Colorado law or federal common law governs the res judicata issue in this case. Generally, federal courts "apply state law to determine the claim-preclusive effect of a federal diversity judgment." *Mid-Continent Cas. Co. v. True Oil Co.*, 767 F.3d 1000, 1004 (10th Cir. 2014) (quotation and citation omitted); *but see Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197–98 (10th Cir. 2000) ("although the issue precluded, negligence, is a matter of state law, the preclusive effect given in federal court to a prior federal judgment is subject to federal law"). However, where the prior court exercised federal question jurisdiction,"[t]he preclusive effect of a federal-court judgment is determined by federal common law." *Johnson*, 950 F.3d at 708 (citation omitted). The Court finds that it is unnecessary to resolve this question because both the Tenth Circuit and Colorado apply the transactional approach to res judicata. *See Boulter v. Noble Energy Inc.*, 74 F.4th 1285, 1289 (10th Cir. 2023) (declining to resolve whether Colorado or federal common law governs the preclusive effect of a federal court's judgment because "federal and Colorado law define issue preclusion similarly," and the "outcome under either is the same"); *Layton Constr. Co. v. Shaw Cont. Flooring Servs., Inc.*, 409 P.3d 602, 607 (Colo. App. 2016) (citing *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 609 (Colo. 2005)) (applying the transactional approach).

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint and Jury Demand [Docket No. 17] is **GRANTED**.  It is further

**ORDERED** that plaintiff Darren Markley's claim for wrongful discharge in violation of public policy is **DISMISSED with prejudice**.  It is further

**ORDERED** that this case is closed.

DATED March 26, 2024.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge